ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| AIDA GARCÍA RINALDI Y OTROS<br><br>APELANTES<br><br>V.<br><br>WALGREENS OF PUERTO RICO Y OTROS<br><br>APELADOS | KLAN202200431 | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br>SJ2019CV09481<br><br>Sala: 508<br><br>Sobre:<br><br>INCUMPLIMIENTO DE CONTRATO |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda del Toro.

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Se encuentra ante nuestra consideración el *Recurso de Apelación Enmendado*, presentado por Aida García Rinaldi, Raúl Emilio, Aida Irene Fournier García, Frank Fournier García y Fournier Puerto Rico Investments LLC (parte apelante). Solicitan que revisemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 17 de mayo de 2022. Mediante el aludido dictamen el foro de instancia declaró *Ha Lugar* la solicitud de sentencia sumaria parcial presentada Walgreens of Puerto Rico, Inc. (Walgreens PR o apelada) y en consecuencia, desestimó las reclamaciones de la parte apelante relacionadas al incumplimiento de contrato y falta de pago de cánones de arrendamiento.

Adelantamos que, luego de analizar detenidamente la totalidad del expediente ante nos y la comparecencia de ambas partes, se *confirma* la *Sentencia Parcial* recurrida.

I

El 13 de septiembre de 2019, Aida García Rinaldi y sus hijos, Raúl Emilio, Aida Irene y Frank, todos de apellidos Fournier-García presentaron

una *Demanda* contra Walgreens PR por incumplimiento de contrato, cobro de cánones de arrendamiento y daños ocasionados a la propiedad.[1] Indicaron que el 5 de julio de 1990, Walgreens PR suscribió un contrato de arrendamiento con Edgardo J. Rivera Gómez y Blanca E. Rosa Hernández para arrendar una propiedad de éstos localizada en el 201 Calle de la Cruz & San Francisco, San Juan, Puerto Rico. El referido contrato se constituyó en la Escritura Pública Número Cuatro (4), ante la notaria Luisa M. Vela Gutiérrez, y fue inscrito en el Registro de la Propiedad. El 10 de febrero de 1992 los demandantes adquirieron dicha propiedad mediante compraventa asumiendo el contrato de arrendamiento con Walgreens PR.

En esencia, la parte demandante alegó que Walgreens PR incumplió con el contrato de arrendamiento al dejar de pagar el canon de renta acordado desde julio de 2017, sin cancelar el acuerdo conforme a los términos y condiciones establecidos. Argumentó que la carta remitida por Walgreens Co notificando la cancelación del contrato efectivo el 30 de junio de 2017 era inoficiosa por cuanto no cumplió con los términos establecidos para notificar una cancelación temprana en adición a que dicha compañía no tenía autoridad para cancelar el contrato. A esos efectos, reclamó la suma de $2,700,000 por concepto del canon de arrendamiento correspondiente al término de vigencia del contrato y $500,000 por los daños ocasionados por el alegado incumplimiento. También reclamó la suma de $93,760.00 por los gastos incurridos para reparar los daños ocasionados al local durante el arrendamiento.

Walgreens PR presentó su *Contestación a la Demanda Enmendada* y *Reconvención*. Alegó que mediante la carta enviada el 9 de diciembre de 2016 por Walgreens Co, agente representante y matriz de Walgreens PR, ejerció oportunamente su opción de terminar el arrendamiento según los términos del contrato. Sostuvo que aunque la tienda Walgreens operó en la propiedad arrendada hasta el 25 de agosto de 2016, continuó pagando

---

[1] Los demandantes solicitaron enmendar la demanda para incluir como parte codemandante a Forunier Puerto Rico Investments, LLC, titular registral del inmueble objeto de controversia. Ello fue autorizado por el TPI mediante *Resolución* del 24 de noviembre de 2020.

la renta hasta el 30 de junio de 2017, fecha de efectividad de la cancelación del contrato. Negó los daños a la propiedad reclamados alegando afirmativamente que éstos fueron causados por filtraciones de agua provenientes del apartamento en el piso superior a la propiedad arrendada, controlado por la parte demandante. En su *Reconvención* solicitó que se dictara sentencia declaratoria a su favor decretando que canceló el contrato oportunamente conforme a los términos establecidos para ello y que se condenara a la parte demandante a reembolsar los pagos de arrendamiento durante el periodo en que la propiedad sufrió daños por las filtraciones de agua, por haber sido cobrados indebidamente.

Luego de varios trámites procesales y concluido el descubrimiento de prueba, Walgreens PR presentó una *Solicitud de Sentencia Sumaria Parcial* en la cual solicitó que se desestimaran las reclamaciones sobre el alegado incumplimiento de contrato por falta de cancelación y sobre la falta de pago de los cánones de arrendamiento posteriores al 30 de junio de 2017.[2]

La parte demandante presentó una *Réplica a Moción solicitando que se dicte sentencia sumaria y Moción solicitando que se dicte sentencia sumaria a su favor* con la cual peticionó que se declarara *No Ha Lugar* la solicitud de sentencia sumaria de Walgreens PR y, en cambio, se dictara sentencia sumaria a su favor ordenando a la otra parte el pago de lo adeudado y los daños reclamados. En reacción, Walgreens PR presentó una oposición a la solicitud de sentencia sumaria de la parte demandante. En ésta reiteró que no existía controversia sobre los hechos esenciales a la controversia sobre el alegado incumplimiento contractual y refutó los hechos alegadamente no controvertidos por la parte demandante en su moción de sentencia sumaria haciendo referencia a documentos en apoyo.

Luego de evaluar las comparecencias de las partes el TPI emitió una *Sentencia Sumaria Parcial* declarando *Ha Lugar* la solicitud de sentencia

---

[2] No solicitó que se dispusiera sumariamente de la reconvención instada y de la reclamación de daños de los demandantes, por entender que habían hechos esenciales en controversia sobre la causa de los daños sufridos por la propiedad.

sumaria de Walgreens PR.[3] En consecuencia, desestimó la reclamación de los demandantes por alegado incumplimiento de contrato y cobro de renta. No obstante, ordenó la continuación de los procedimientos con relación a la reclamación de la parte demandante por los daños presuntamente causados a la propiedad y a la reconvención instada por Walgreens PR.

En su determinación parcial el foro de instancia entendió que no había controversia en torno a los siguientes hechos:

1. El 5 de julio de 1990, Walgreens Puerto Rico arrendó una propiedad del Sr. Edgardo Julián Rivera Gómez y la Sra. Blanca Elisa Rosa Hernández. Esta propiedad está localizada en la Calle de la Cruz y San Francisco en San Juan, Puerto Rico.

2. Posteriormente, el 8 de noviembre de 1991, la señora Aida García Rinaldi y su esposo Frank Fournier Rodríguez adquirieron mediante compraventa la propiedad antes mencionada. A causa de ello, asumieron el contrato de arrendamiento con Walgreens Puerto Rico.

3. Las partes pactaron un término de arrendamiento de 50 años desde que Walgreens Puerto Rico comenzara sus operaciones.

4. Las partes pactaron un canon de arrendamiento de quince mil dólares ($15,000.00) al mes.

5. La cláusula 2(d) establece las fechas en las cuales el arrendatario puede ejercer la opción de cancelar el contrato de arrendamiento antes del periodo pactado de 50 años. Estas fechas serán el último día de los meses 180, 240, 300, 360, 420, 480 y 540 del término del contrato. En específico, la cláusula dispone lo siguiente:
    > Tenant shall have the right and option, at Tenant's election to terminate this lease effective as of the last day of the one hundred and eightieth (180th) full calendar month of the term, effective as of the last day of the two hundred and fortieth (240th) full calendar month of the term, effective as of the last day of the three hundredth (300th) full calendar month of the term, effective as of the last day of the three hundred and sixtieth (360th) full calendar month of the term, effective as of the last day of the four hundred and twentieth (420th) full calendar month of the term, effective as of the last day of the four hundred and eightieth (480th) full calendar month of the term and effective as of the last of the five hundred and fortieth (540th) full calendar month of the term.

6. La cláusula 2(b) y (c) establece cuando será el comienzo del término del arrendamiento para propósitos de determinar cuando se cumplen los periodos en los cuales el arrendatario puede ejercer la cancelación temprana del arrendamiento. El primer año de arrendamiento comenzará en la fecha en que se comience a cobrar la renta y si dicho comienzo es el primer día del mes, finalizará doce

---

[3] Emitida y notificada el 17 de mayo de 2022. Véase *Apéndice* de la *Apelación Civil Enmendada*, págs. 255-267.

meses después. No obstante, la cláusula establece que si el contrato comienza un día del mes calendario que no sea el primer día del mes, el término del año finalizará el primer día del mismo mes calendario del próximo año. En específico, la cláusula dispone que:

   a. The term of this lease shall commence on April (1), Nineteen Hundred Ninety One (1991) and shall continue to and include March Thirty-First (31), Two Thousand Forty One (2041).

   b. If the fixed rent shall not have begun to accrue on the date above specified for the commencement of the term of this lease, then the term shall not commence until the date on which the fixed rent begins to accrue and shall continue for fifty (50) years thereafter; provided, however, that if such commencement date be other than the first day of the calendar month, then the term shall continue to and include the last day of the same calendar month of the fiftieth (50th) year thereafter.

   c. The first lease year shall commence on the date fixed rent begins to accrue and, if such commencement be on the first day of a calendar month, shall end twelve months thereafter, or, if such commencement be other than the first day of the calendar month, shall end on the first day of the same calendar month of the first year thereafter, and each succeeding lease year shall be each succeeding twelve months period.

7. La cláusula 2(d) dispone la forma en la cual el arrendatario debe ejercer la cancelación temprana. El arrendatario debe comunicarle al arrendador a lo menos de seis (6) meses antes de la fecha de terminación del arrendamiento la intención de cancelar. En suma, la cláusula establece que:

> If Tenant shall elect to exercise any such option, Tenant shall send notice thereof to Landlord, at least six (6) months prior to the date this lease shall so terminate, but no notice shall be required to terminate this lease upon the expiration of the full term.

8. La cláusula 25 del contrato establece los requisitos de forma para las comunicaciones entre el arrendatario y el arrendador. Estas comunicaciones deben constar por escrito, ser enviadas por correo certificado o registrado, el envío debe ser prepagado y enviadas a la dirección del arrendatario donde se envían los cheques o, si es dirigida al arrendador, a la siguiente dirección: 200 Wilmot Road, Deerfield, Illinois, 60015, con atención al Departamento Legal. La referida cláusula establece lo siguiente:

> All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to Landlord, to the place where rent checks are to be mailed, and if to Tenant, to 200 Wilmot Road, Deerfield, Illinois, 60015, Attention: Law Department, and a duplicate to the Leased Premises provided that each party by like notice may designate any future or different addresses to which subsequent notices shall be sent. Notices shall be deemed given upon receipt or upon refusal to accept delivery.

9. Walgreens Puerto Rico comenzó sus funciones en la propiedad arrendada el 9 de junio de 1992.

10. El 9 de diciembre de 2016, Walgreens Company (en adelante, "Walgreens Co"), a través del licenciado Richard Steiner, envió al Sr. Frank Fournier una carta por correo certificado con acuse de recibo en la cual notificó la intención de cancelar el contrato de arrendamiento efectivo el 30 de junio de 2017. El licenciado Richard Steiner es representante legal de Walgreens Co y Walgreens Puerto Rico y miembro del Departamento de Derecho Inmobiliario ("Real Estate Law Department") de Walgreens Co.

11. El Comité de Bienes Raíces ("Real Estate Committee") y el Departamento de Derecho Inmobiliario de Walgreens Co están facultados para tomar decisiones en cuento al portafolio de bienes raíces de Walgreens Co y todas las afiliadas de Walgreens Co.

12. Walgreens Co era la compañía matriz ("parent company") de Walgreens Puerto Rico durante el inicio del contrato para el 5 de julio de 1990. Subsecuentemente, Walgreens Co y Walgreens Puerto Rico se convirtieron en afiliadas.

13. Walgreens Puerto Rico continuó operando comercialmente en la propiedad arrendada hasta el 26 de agosto de 2016.

14. Walgreens Puerto Rico pagó el canon de arrendamiento por quince mil dólares ($15,000.00) mensuales hasta el 30 de julio de 2017.

De manera oportuna la parte apelante presentó la *Apelación Civil Enmendada* que nos ocupa. En esta señala que el foro de instancia erró en lo siguiente.

1) … en dictar sentencia sumaria sin tomar en consideración toda la evidencia presentada por las partes.

2) … en tratar el Arrendamiento mediante escritura pública como un derecho personal y no como un derecho real.

3) … en determinar que el mero hecho de que Walgreens de Puerto Rico y Walgreens Co son entidades afiliadas, Walgreens Co puede cancelar un contrato otorgado mediante escritura pública sin la debida autorización requerida por la Ley de Corporaciones de Puerto Rico y el Derecho Registral aplicable.

4) … en determinar que el contrato entre las partes fue cancelado dentro de los términos de la escritura de arrendamiento, en una fecha que está mal calculada en violación a las cláusulas del contrato.

5) … al determinar que Walgreens Co tenía autoridad para cancelar un contrato otorgado mediante escritura pública, porque las cláusulas administrativas del contrato en cuanto a cómo manejar comunicaciones y pago, le otorga ese derecho a pesar de que la cancelación por tercero no está expresamente convenida en ninguna de las cláusulas de la escritura_y no existe autorización conforme a derecho o novación de sustitución de parte expresa de parte de los contratantes.

Luego de varios trámites procesales Walgreens PR presentó su *Alegato de la parte apelada.* Por lo que, contando con la posición de ambas partes resolvemos las controversias planteadas de conformidad con el marco jurídico que esbozaremos a continuación.

II

A.

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020). *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016).

La Regla 36 de Procedimiento Civil detalla los requisitos de forma para presentar tanto la moción de sentencia sumaria como su respectiva oposición. 32 LPRA Ap. V, R. 36. Así, la parte que alegue que no existe una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. *Íd.* Además, tanto la moción como su oposición deben presentar una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. *Íd*; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); S*LG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).

Es decir, el promovido no puede descansar en meras alegaciones y afirmaciones.  Por el contrario, debe someter evidencia sustancial de los hechos materiales que están en disputa y demostrar que tiene prueba para sustanciar sus alegaciones. *SLG Zapata Berríos v. JF Montalvo,* supra; *Ramos Pérez v. Univisión*, supra, pág. 215. De incumplir con ello, corre el

riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. *León Torres v. Rivera*, supra, pág. 44; *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

En suma, si el cúmulo de la evidencia anejada demuestra que en efecto no hay controversia sustancial en cuanto algún hecho esencial y pertinente, el tribunal deberá dictar sentencia sumaria si procede como cuestión de derecho. 32 LPRA Ap. V, R. 36. De otro lado, no deberá dictar sentencia sumaria si: (1) existen hechos esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge una controversia real sobre algún hecho esencial o material de los propios documentos que acompañan la moción, o (4) no procede como cuestión de derecho. *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 595 (2013). Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univision*, supra, pág. 216.

Igual que el Tribunal de Primera Instancia, este Tribunal de Apelaciones se rige por la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia al determinar si procede una sentencia sumaria. *Meléndez González et al v. M Cuebas,* 193 DPR 100 (2015). Ello quiere decir que debemos realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Íd*; *Ramos Pérez v. Univision,* supra. Si de los documentos surge duda sobre la existencia de una controversia de hechos, estas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. *Rosado Reyes v Global*, 205 DPR 796, 809 (2020).

B.

Los contratos son una de las fuentes de obligaciones en nuestro ordenamiento. [4] Para que un contrato exista y obligue a las partes debe cumplir con los requisitos siguientes: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. [5] Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes por lo que se debe cumplir con el mismo.[6] En nuestro ordenamiento rige el principio de autonomía contractual por lo que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, la moral y orden público.[7] Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley.[8] Cuando un contrato es legal y válido, y no contiene vicio alguno, los Tribunales de Justicia no pueden relevar a una parte de su cumplimiento. *De Jesús González v. Autoridad de Carreteras,* 148 DPR 255 (1999); *Mercado, Quilinchini v. U.C.P.R.,* 143 DPR 610 (1997).

En general, la interpretación de los contratos se rige por el esquema dispuesto en nuestro Código Civil, teniendo presente en todo momento la intención de las partes. [9] Primeramente, se examinan los términos del contrato, de ser claros, se hace valer el sentido literal de lo allí dispuesto. Sin embargo, si lo consignado en el acuerdo aparenta ser contrario a la intención de las partes, prevalece esta última. *Savary v. Mun. Fajardo*, 198 DPR 1014, 1015 (2017). Como parte de este proceso, se examinan los actos contemporáneos y posteriores al acuerdo con el fin de

---

[4] Considerando que el contrato objeto de controversia fue celebrado bajo la vigencia del anterior Código Civil de 1930, analizaremos los errores planteados a la luz de dicha legislación y su jurisprudencia interpretativa, de conformidad con lo dispuesto en el Art. 1812 del Código Civil de 2020, 31 LPRA sec. 11717.

[5] Art. 1213, Código Civil 1930; véase Art. 1237, Código Civil 2020, 31 LPRA sec. 9771.

[6] Art. 1044, Código Civil 1930; véase Art. 1233, Código Civil 2020, 31 LPRA sec. 9754.

[7] Art. 1207, Código Civil 1930; véase Art. 1232, 31 LPRA sec. 6141.

[8] Art. 1210, Código Civil 1930; véase Art. 1237, 31 LPRA sec. 9771.

[9] Arts. 1233 a 1241, Código Civil 1930; véase Art. 354, Código Civil 2020, 31 LPRA sec. 6342 (b).

verificar la intención de las partes. Finalmente, las disposiciones del contrato se interpretan de manera integrada, cónsona con los designios de los contratantes. *Íd.*

C.

Una corporación es una entidad que goza de personalidad jurídica, distinta y separada a las de sus dueños o accionistas. C.E. Díaz Olivo, *Corporaciones: Tratado sobre derecho corporativo*, Ed. AlmaForte, 2da ed. rev., 2018, pág. 45. En nuestro ordenamiento las corporaciones se establecen al amparo de la Ley General de Corporaciones de Puerto Rico, Ley Núm. 164-2009, según enmendada, 14 LPRA 3501 *et seq.*

Las corporaciones pueden crearse para cualquier negocio o propósito lícito, excepto los proscritos por ley. 14 LPRA sec. 3501. Entre sus poderes tienen facultad para comprar y arrendar bienes muebles e inmuebles y para otorgar contratos. 14 LPRA sec. 3522. Para realizar tales actividades con eficacia jurídica las corporaciones se valen de directores y oficiales. *Gasolinas P.R. v. Registrador,* 155 DPR 652, 665–666 (2001).

De ordinario, las corporaciones se obligan a través de sus oficiales de las siguientes maneras: (1) por virtud de la autoridad que los estatutos corporativos le hayan conferido; (2) por autorización expresa otorgada mediante resolución corporativa; (3) por autorización implícita; (4) por autoridad aparente; o (5) por virtud de cierta facultad inherente a su cargo. *Gasolinas P.R. v. Registrador*, 155 DPR 652, 666 (2001). Al respecto, el profesor Díaz Olivo explica lo siguiente:

> [L]a determinación de si un funcionario o un oficial corporativo posee la facultad de vincular y actuar a nombre de la corporación no depende necesariamente de su título, sino de la autoridad que se le confirió o que aparentemente se le confirió en la estructura corporativa. Al analizar problemas de esta naturaleza, la jurisprudencia norteamericana ha hecho uso de las normas del contrato de agencia, equivalente a la figura del mandato en el derecho civilista. Así pues, se ha reconocido que un funcionario corporativo puede vincular y obligar a la corporación si posee autoridad real para ello. La autoridad real es aquélla que el principal da a entender al agente que posee.
> La autoridad real puede ser expresa o implícita. La expresa es la que se confiere específicamente al oficial en los estatutos o en las resoluciones de la junta de directores. […]

La autoridad implícita es la que se infiere de las palabras y la conducta de la corporación y el funcionario, dentro del contexto de la relación entre las partes. […]

La jurisprudencia también ha reconocido que un oficial puede vincular a la corporación cuando tiene autoridad aparente. Contrario al caso de la autoridad implícita, la autoridad aparente sólo existe o se reconoce con relación a terceras personas; esto es, la autoridad que personas ajenas a la corporación pueden razonablemente entender que un oficial corporativo posee en vista de la conducta y el desempeño de la corporación. […]

Además, se ha reconocido que un agente puede vincular a una corporación si cuanta con autoridad inherente para ello. Esta es la autoridad que de ordinario posee una persona por la posición o función que desempeña para su principal. [ ... ]

Finalmente, cualquier actuación de un oficial o un funcionario corporativo puede vincular a la corporación, aun sino posee autoridad real, aparente o inherente. El vínculo sucede cuando: la actuación es ratificada por la junta de directores de la corporación, la corporación retiene para sí los beneficios del contrato otorgado por el agente no autorizado, o cuando la corporación esta impedida de negar la autoridad del oficial. (Citas omitidas). Díaz Olivo, *op. cit.,* págs. 195-196.

III

A.

A modo de umbral nos corresponde determinar si en este caso las partes cumplieron con los requisitos procesales que impone la Regla 36 de Procedimiento Civil, *supra,* para la presentación de una moción de sentencia sumaria y su respectiva oposición. En su moción de sentencia sumaria Walgreens PR se limitó a solicitar la desestimación sumaria de la causa de acción de incumplimiento de contrato y cobro de renta. Para ello presentó en párrafos enumerados los hechos esenciales a dicha causa de acción que a su juicio no estaban en controversia haciendo referencia en cada uno de ellos a documentos presentados en apoyo. La parte demandante por su parte, no se opuso a los hechos alegadamente incontrovertidos por Walgreens PR y en cambio formuló varios hechos que a su juicio son esenciales y que no están en controversia haciendo referencia a documentos presentados en apoyo. Si bien varios de los hechos propuestos por Walgreens PR también fueron propuestos como hechos incontrovertidos por la parte demandante, otros hechos esenciales a la controversia planteados por Walgreens PR no fueron refutados. Por ejemplo, los hechos relacionados a la notificación sobre cancelación del

contrato de arrendamiento y a la autoridad de Walgreen Co para notificar el aviso de cancelación del contrato de arrendamiento.

Habiendo examinado el cúmulo de evidencia incluida en las mociones de sentencia sumaria y en el expediente del tribunal concluimos que, en efecto, no existe controversia sustancial respecto a algún hecho esencial y pertinente a la causa de acción sobre incumplimiento de contrato, por lo que procedía disponer de la misma de manera sumaria. El primer error señalado no se cometió. El foro de instancia solo formuló determinaciones de hechos esenciales y pertinentes que no estaban en controversia. Además, la parte apelante no especificó cuál es la evidencia que el TPI supuestamente descartó y como su consideración habría variado el resultado del caso.

Nos corresponde ahora evaluar si procedía como cuestión de derecho acoger la solicitud de sentencia sumaria de Walgreens PR y desestimar la referida causa de acción.

B.

Según surge del expediente que entre las partes no existe controversia en torno a los siguientes hechos. El 5 de julio de 1990 Walgreens PR suscribió un contrato de arrendamiento para arrendar la propiedad localizada en la Calle de la Cruz y San Francisco en San Juan, Puerto Rico. El 8 de noviembre de 1991 la parte apelante adquirió la propiedad en cuestión y asumió el contrato de arrendamiento. Walgreens PR comenzó su operación en la referida propiedad el 9 de junio de 1992 y cesó operaciones el 25 de agosto de 2016.

El Lcdo. Richard Steiner, representante de Walgreens Co, envió una carta a Frank W. Fournier[10] en la que se le informaba que el arrendatario interesaba ejercer su derecho a cancelar el contrato de arrendamiento efectivo el 30 de junio de 2017. La carta fue enviada por correo certificado y con acuse de recibo. Aunque estaba fechada el 9 de diciembre de 2016,

---

[10] El señor Frank W. Fournier, esposo de la señora García Rinaldi y padre de los codemandantes, falleció el 6 de octubre de 2017.

fue depositada en el correo el 20 de diciembre y recibida el 23 de diciembre de 2016. Walgreens PR continuó pagando los cánones de arrendamiento hasta el 30 de junio de 2017.

No obstante, las partes mantienen posiciones distintas en cuanto a si la carta enviada cumplió con los términos del contrato para cancelar tempranamente el término del arrendamiento y si Walgreens Co tenía autoridad para notificar el aviso de cancelación del contrato de arrendamiento. Estas no son controversias de hechos, sino controversias de derecho que requieren interpretar los términos del contrato en cuestión y el marco jurídico aplicable. Veamos.

La parte apelante alega que al interpretar la Cláusula 2(b) y (c) del contrato de arrendamiento se concluye que el primer año calendario del contrato debe contabilizarse desde el primer mes de arrendamiento que fue junio de 1992 hasta mayo de 1993. Considerando lo anterior interpreta que la Cláusula 2(d) del contrato exige concluir que para haber ejercido el derecho a cancelar el contrato en el mes 300 del arrendamiento, Walgreens PR tenía que haberles notificado no mas tarde del 1 de noviembre de 2016. Sostiene que, habiéndose notificado la carta el 23 de diciembre de 2016, el contrato no se canceló oportunamente.

Walgreens plantea por su parte que de conformidad con lo establecido en la Cláusula 2, el contrato se canceló tempranamente. Esto ya que, habiendo iniciado el contrato el 9 de junio de 1992, el último día del mes calendario 300 fue el 30 de junio de 2017, por lo que, el último día para haber notificado que estaría ejerciendo su opción de terminar el contrato era el 30 de diciembre de 2016. Enfatiza que al haber notificado la cancelación con la carta del 9 de diciembre de 2016, canceló el contrato oportunamente.

Para adjudicar esta controversia es necesario considerar la Cláusula Dos (2) del contrato, sobre el término del contrato (*term*), el año de arrendamiento (*lease year*) y las opciones (*options*) para la terminación

temprana del contrato, así como la Cláusula Veinticinco (25) sobre cómo habrían de notificarse a las partes. Veamos.

> **Two (2). <u>Term, Lease Year, Options</u>:**
> (a) The term of this lease shall commence on April One (1), Nineteen Hundred Ninety One (1991) and shall continue to and include march Thirty-First (31), Two Thousand Forty One (2041).
> (b) If the fixed rent shall not have begun to accrue on the date above specified for the commencement of the term of this lease, then **the term shall not commence until the date on which the fixed rent begins to accrue and shall continue for fifty (50) years thereafter**; provided, however, that if such commencement date be other than the first day of the calendar month, then the term shall continue to an include the last day of the same calendar month of the fiftieth (50th) year thereafter.
> (c) The first lease year shall commence on the date fixed rent begins to accrue and**, if such commencement be on the first day of a calendar month, shall end twelve months thereafter, or, if such commencement be other than the first day of the calendar month, shall end on the first day of the same calendar month of the first year thereafter**, and each succeeding lease year shall be each succeeding twelve months period.
> (d) **Tenant shall have the right and option, at Tenant's election to terminate this lease** effective as of the last day of the one hundred and eightieth (180th) full calendar month of the term, effective as of the last day of the two hundred and fortieth (240th) full calendar month of the term, **effective as of the last day of the three hundredth (300th) full calendar month of the term**, effective as of the last day of the three hundred and sixtieth (360th) full calendar month of the term, effective as of the last day of the four hundred and twentieth (420th) full calendar month of the term, effective as of the last day of the four hundred and eightieth (480th) full calendar month of the term and effective as of the last of the five hundred and fortieth (540th) full calendar month of the term. If Tenant shall elect to exercise any such option, **Tenant shall send notice thereof to Landlord, at least six (6) months prior to the date this lease shall so terminate,** but no notices shall be required to terminate this lease upon the expiration of the full term.
> ….
>
> **Twenty-Five (25). <u>Notices</u>: All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, addressed, if to the Landlord, to the place where rent checks are to be mailed**, and if to Tenant, to 200 Wilmot Road, Deerfield, Illinois, 60015, Attention: Law Department, and a duplicate to the Leased Premises, provided that each party by like notice may designate any future or different addresses to which subsequent notices shall be sent. Notices shall be deemed given upon receipt or upon refusal to accept delivery. (Énfasis nuestro).

Entendiendo que los términos del contrato de arrendamiento son claros y no dejan duda sobre la intención de las partes contratantes, hacemos

valer el sentido literal de lo allí dispuesto. Según surge de la Cláusula 2 (a), el contrato de arrendamiento establecía un término fijo de 50 años, con fecha cierta de comienzo y final. Sin embargo, la Cláusula 2(b) dispone que, de no comenzar en la fecha especificada, el término del contrato sería desde la fecha en que empezara a devengarse la renta fija y continuaría por los 50 años subsiguientes; considerándose que, si dicha fecha de inicio no es el primer día del mes calendario, entonces el término continuaría e incluiría el último día del mismo mes calendario del año 50. En la Cláusula 2(c) se establece cómo habrá de contabilizarse un año de arrendamiento (*lease year*) para propósitos del contrato al indicar que el primer año de arrendamiento comenzaría en la fecha en que comience a devengarse la renta fija y terminaría el primer día del mismo mes calendario del año subsiguiente, si como en el caso de autos, dicho comienzo no es el primer día de un mes calendario. El año de arrendamiento sería cada periodo subsiguiente de 12 meses.

En el caso de autos el arrendamiento comenzó el 9 de junio de 1992, fecha en que comenzó a devengarse la renta fija.[11] De manera que, conforme la Cláusula 2(b) el término del arrendamiento sería del 9 de junio de 1999 hasta el 30 de junio del 2042. Conforme a la cláusula 2(c) el primer año de arrendamiento se contabilizaría a partir del 9 de junio de 1992 hasta el 1 de junio de 1993, y cada año de arrendamiento sería cada periodo de 12 meses subsiguiente.

Ahora bien, a pesar de que el contrato tenía un término de vigencia fijo de 50 años, la Clausula 2(d) también dispone que el arrendatario tendría el derecho y la opción de hacer efectiva la cancelación del contrato en varias fechas particulares cumpliendo con un requisito de notificación previa. El arrendatario podía optar por la cancelación temprana con efectividad el último día del mes 180 del término del contrato;[12] el último

---

[11] A partir de esa fecha, la renta fija mensual de $15,000 fue exigible. La fecha de comienzo no varía por el hecho de que en ese mes se haya pagado $11,000 luego de aplicar un ajuste en la cuantía fija para deducir los primeros ocho días del mes.
[12] A 15 años del comienzo del contrato.

día del mes 240;[13] el último día del mes 300;[14] el último día del mes 360;[15] el último día del mes 420;[16] el último día del mes 480;[17] y el último día del mes 540[18]. Siempre y cuando cumpliera con el requisito de notificación de la cancelación al propietario al menos seis meses antes de la fecha en que el contrato finalizaría.

De conformidad con la Cláusula 2(d) y considerando que el contrato comenzó el 9 de junio de 1992, Walgreens PR podía cancelar el contrato con fecha de efectividad el último día del mes 300 del término del contrato, a los 25 años del comienzo del acuerdo. Esto es, el del 30 de junio de 2017. Para ello tenía que cumplir con el requisito de notificar de la cancelación temprana en o antes del 30 de diciembre de 2016. Esto es, al menos seis meses antes de la fecha en que sería efectiva la finalización del contrato. Esta notificación, como cualquier otra entre las partes, tendría que remitirse por escrito a través del correo de conformidad con la Cláusula 25.

Según surge de los hechos no controvertidos, el Lcdo. Richard Steiner, representante de Walgreens Co, notificó a la parte apelante que el arrendatario ejercería su opción de cancelar el contrato de arrendamiento efectivo el 30 de junio de 2017. La misiva, que tenía fecha del 9 de diciembre de 2016, fue enviada el 20 de diciembre de 2016 por correo certificado y con acuse de recibo al señor Fournier. La misma se recibió el 23 de diciembre de 2016.

En atención a lo anterior concluimos que Walgreens PR ejerció su derecho a cancelar tempranamente el contrato con fecha de efectividad del 30 de junio de 2017 de conformidad con los términos del contrato.

C.

Nos corresponde ahora analizar si el Lcdo. Richard Steiner representante de Walgreens Co, tenía autoridad para notificar la cancelación del referido contrato. En resumen, la parte apelante plantea en

---

[13] A 20 años del comienzo del contrato.
[14] A 25 años del comienzo del contrato.
[15] A 30 años del comienzo del contrato.
[16] A 35 años del comienzo del contrato.
[17] A 40 años del comienzo del contrato.
[18] A 45 años del comienzo del contrato.

sus señalamientos de error 2-5 que solo Walgreens PR podía cancelar el contrato ya que es la parte que suscribió el contrato de arrendamiento, nunca se realizó una sustitución expresa del arrendador, y el contrato no establece la cancelación por tercero. Indicó que para que la cancelación efectuada por Walgreens Co tuviera efecto jurídico dicha compañía tenía que contar con una resolución corporativa otorgada por la junta de directores de Walgreens PR autorizándole a representarle. Abundó que al inscribirse el arrendamiento en el Registro de la Propiedad este se convirtió en un derecho real que grava la propiedad y que solo podía ser cancelado en dicho registro por Walgreens de PR a cuyo nombre se inscribió o por su representante autorizado mediante resolución corporativa. Enfatizó que el hecho de que entablara comunicación con y aceptara los pagos de Walgreens Co no es un acto que constituya la aceptación de la sustitución del verdadero arrendatario.

Walgreens PR sostuvo por su parte que en la moción de sentencia sumaria se presentó evidencia de la autoridad conferida al Lcdo. Richard Steiner para cancelar el arrendamiento la cual no fue refutada por la parte apelante. Enfatizó que es contrario a la buena fe que la parte apelante se niegue a reconocer la autoridad de Walgreens Co para cancelar el contrato a pesar de que en el contrato se identifica expresamente la dirección de Walgreens Co como aquella a la que habrá de dirigirse toda comunicación con la arrendataria. Además, con sus propios actos así lo reconocieron desde que adquirieron la propiedad arrendada. Como prueba de lo último presentó las múltiples comunicaciones que la parte apelante dirigió a Walgreens Co. para comunicar asuntos relacionados a la propiedad y al arrendamiento.

La controversia entre las partes gira en torno a si el Lcdo. Richard Steiner, representante de Walgreens Co, tenía autoridad para notificar sobre la cancelación del contrato de arrendamiento suscrito por Walgreens PR en calidad de parte arrendataria. Adelantamos nuestra respuesta en la afirmativa.

De la prueba presentada por Walgreens PR en su moción de sentencia sumaria y en su oposición a la solicitud de sentencia sumaria de la parte demandante, surge que el Lcdo. Richard Steiner tenía autoridad real implícita para actuar en representación de Walgreens PR y ello era conocido por la parte apelante. Adviértase que la autoridad real para obligar o vincular a una corporación, no se acredita solamente mediante autorización expresa como lo sería una resolución corporativa otorgada por la junta de directores. También puede acreditarse mediante autorización implícita la cual puede inferirse de las palabras y la conducta de la corporación y del funcionario, dentro del contexto de la relación entre las partes.

Al momento de suscribirse el contrato de arrendamiento Walgreens Co era la compañía matriz de Walgreens PR. Posteriormente, Walgreens Co se convirtió en afiliada de Walgreens PR y como tal, estaba autorizada a comunicarse con los arrendadores de Walgreens PR.[19] El Lcdo. Richard Steiner, abogado de Walgreens Co y de Walgreens PR, fue autorizado por el Comité de Real Estate de Walgreens y por Walgreens PR para cancelar el contrato de arrendamiento.[20] Resulta más significativo aún que según lo dispuesto en la Cláusula 25 del contrato de arrendamiento, toda comunicación dirigida al arrendatario debía ser remitida a la dirección de Walgreens Co, esto es 200 Wilmot Road, Deerfield, Illinois, 60015, con atención al Departamento Legal.

Durante el arrendamiento la parte apelante reconoció la autoridad de Walgreens Co para actuar en representación de Walgreens PR al mantener comunicaciones constantes con Walgreens Co y sus representantes para atender asuntos del contrato de arrendamiento, al autorizar a Walgreens Co a realizar los pagos de la renta mediante

---

[19] Exhibit 19, *Solicitud de Walgreens de Sentencia Sumaria Parcial*, Entrada #74 SUMAC. *English translation of First set of interrogatories and request for documents from Walgreen PR*, respuesta al interrogatorio #6.

[20] Exhibit 19, *Solicitud de Walgreens de Sentencia Sumaria Parcial*, Entrada #74 SUMAC. *English translation of First set of interrogatories and request for documents from Walgreen PR*, respuesta a interrogatorios # 4 y 5.

transferencias electrónicas y al exigir a Walgreens Co los pagos de renta alegadamente adeudados.

El 11 de diciembre de 1991, Frank W. Fournier le dirigió una carta a Mary Butler del Departamento Legal de Walgreens Co, entonces compañía matriz de Walgreens PR, informándole que había adquirido la propiedad arrendada.[21] El 2 de julio de 2013, Frank W. Fournier autorizó a Walgreens Co a realizar transferencias electrónicas de fondos para pagar la renta, en representación de sus afiliadas y subsidiarias.[22] Asimismo, el 19 de diciembre de 2017, la parte apelante, por conducto de la Lcda. Damaris Quiñones, solicitó a la dirección de Walgreens Co el pago de las rentas alegadamente adeudadas por Walgreens PR.[23]

Además de las comunicaciones antes mencionadas, Walgreens PR incluyó en su solicitud de sentencia sumaria múltiples comunicaciones en las que la parte demandante reconoce la autoridad de Walgreens Co y sus representantes, para representar a Walgreens PR.[24]

En atención a la evidencia presentada por Walgreens PR y que no fue refutada por la parte apelante, resulta incuestionable que el Lcdo. Richard Steiner, representante legal de Walgreens PR y de Walgreens Co, tenía autoridad real implícita de Walgreens PR para notificar sobre la cancelación del contrato de arrendamiento. Por consiguiente, habiéndose

---

[21] Exhibit #3 *Solicitud de Walgreens de Sentencia Sumaria Parcial*, Entrada #74, SUMAC.
[22] Exhibit #6 *Solicitud de Walgreens de Sentencia Sumaria Parcial*, Entrada #74, SUMAC.
[23] Exihibit # 22 y #4 *Solicitud de Walgreens de Sentencia Sumaria Parcial*, Entrada #74, SUMAC.
[24] **Exhibit 7** – Carta del 2 de julio de 1992 del Sr. Fournier al Lcdo. Robert M. Silverman del Departamento Legal de Walgreen Co., sobre medidas tomadas para corregir las filtraciones de agua reportadas; **Exhibit 8** – Carta del 19 de octubre de 1995 de Laurie M. Bishop, Paralegal de Walgreens Co., al Sr. Frank W. Fournier, sobre la instalación de equipo de revelado de fotografías, en la cual se incluye la aprobación y firma del Sr. Fournier; **Exhibit 9** – Carta del 2 de mayo de 1997 de Laurie M. Hodge, Property Manager de Walgreens Co., al Sr. Fournier sobre planes de remodelación en la Propiedad Arrendada, en la cual se incluye la aprobación y firma del Sr. Fournier**; Exhibit 10** – Carta del 17 de noviembre de 2004 de W.E. Bolssens, Senior Fac. Mgr, Walgreens Co. al Sr. Fournier sobre recurrencia de filtraciones; **Exhibit 11** – Carta del 18 de julio de 2005 del Sr. Fournier a W.E. Bolssens, Senior Facilities Manager, Walgreens Co., en relación a filtraciones en el área de los tragaluces; **Exhibit 12** – Carta del 9 de julio de 2009 del Sr. Fournier a Miguel Bosques, Regional Facilities Manager, Walgreens Co. en relación a condensación causada por el sistema de aire acondicionado en respuesta a Carta fechada 25 de junio de 2009 de Miguel Bosques al Sr Fournier sobre varias filtraciones de techo; **Exhibit 13** – Carta del 13 de agosto de 2009 del Sr. Fournier a Miguel Bosques, Regional Facilities Manager, Walgreens Co., sobre inspección para corregir las filtraciones; **Exhibit 14** – Carta del 29 de julio de 2014 del Sr. Fournier autorizando la instalación de letreros, y carta del 25 de julio de 2014 de Michael Redstone, Director and Managing Counsel de Walgreens Co., dirigida al Sr. Fournier solicitando autorización para instalar letreros; **Exhibit 15** – Walgreens Contact List.

cancelado el contrato oportunamente de conformidad con los términos del acuerdo y por medio de un agente de Walgreens PR con autoridad para representarle, procedía desestimar la causa de acción contra Walgreens PR por alegado incumplimiento de contrato y cobro de renta.

IV

Por los fundamentos antes expuestos *confirmamos* la *Sentencia Sumaria Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones